UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Gloria J. Adkins,

                    Plaintiff,

                                             **Hon. Hugh B. Scott**

                                             04CV875

                v.

                                               **Report
and
Recommendation**

COMMISSIONER OF SOCIAL SECURITY[1],

                    Defendant.
_____

      The plaintiff has commenced two separate actions challenging two administrative

decisions, regarding her application for disability benefits.  Because both cases revolve around

the same factual circumstances, this Report & Recommendation will deal with both cases.

Currently before the Court are the parties' respective motions for judgment on the pleadings.

---

      [1]For convenience, defendant will be identified by the official title only.  <u>See</u> Fed. R. Civ.
P. 25(d); 42 U.S.C. § 405(g) (action survives despite change in office of Commissioner).

**INTRODUCTION**

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination

of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled

to disability insurance benefits and/or Supplemental Security Income benefits.


**PROCEDURAL BACKGROUND**

The plaintiff, Gloria J. Adkins,  ("Adkins" or "plaintiff"), filed an initial application for

disability insurance benefits and supplemental security insurance benefits on November 24,

2000.   That application was denied initially and on  reconsideration.  The plaintiff appeared

before an Administrative Law Judge ("ALJ"), who considered the case <u>de novo</u> and concluded,

in a written decision dated September 25, 2002, that the plaintiff was not disabled within the

meaning of the Social Security Act.  The ALJ's decision became the final decision of the

Commissioner on April 30, 2004, when the Appeals Council denied plaintiff's request for review.

In this application, the plaintiff alleged that she was unable to work since January 3, 2000 due to

low back and knee pain.  She also alleged that she suffered from depression in February of 2001.

(Case No. 04CV875, R.. 139-141, 179, 551-52, 202).

Adkins filed a second application for supplemental security insurance benefits on October

25, 2002, once again alleging that she has been disabled since January 3, 2000 due to a herniated

disc, a tear in her right knee, depression, high blood pressure and carpel tunnel syndrome. (Case

No. 05CV31, R.. 50-52, 75).  That application was also denied initially and on  reconsideration.

The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case <u>de</u>

<u>novo</u> and concluded, in a written decision dated October 6, 2004, that the plaintiff was not

disabled within the meaning of the Social Security Act.  The ALJ's decision became the final

decision of the Commissioner on December 15, 2004, when the Appeals Council denied

plaintiff's request for review.

Plaintiff subsequently commenced these actions in federal court.  The defendant has

moved for judgment on the pleadings in both cases.


## **LEGAL STANDARD**


The only issue to be determined by this Court is whether the ALJ's decision that the

plaintiff was not under a disability is supported by substantial evidence.  See 42 U.S.C. § 405(g);

Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).  Substantial evidence is defined as "'more

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting

Consolidated  Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

For purposes of both Social Security insurance and disability insurance benefits, a person

is disabled when he  is unable "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than

12 months."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental

impairment or impairments are of such severity that [he or she] is not only unable to do [his or

her] previous work but cannot, considering [his or her] age, education, and work experience,

engage in any other kind of substantial gainful work which exists in the national economy . . . ."

42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that her impairment prevents her from returning to her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative  substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

> (1) whether the plaintiff is currently working;
>
> (2) whether the plaintiff suffers from a severe impairment;
>
> (3) whether the impairment is listed in Appendix 1 of the relevant regulations;
>
> (4) whether the impairment prevents the plaintiff from continuing her  past relevant work; and
>
> (5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing her past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work she has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to her past relevant work given her residual functional capacity. Washington, supra, 37 F.3d at 1442.

Also, where as here, the record contains evidence of alcohol or substance abuse, the ALJ must assess the degree, if any, that any alcoholism or substance abuse contributes to the plaintiff's impairments. The Social Security Act bars a finding of disability if drug addition or alcoholism is a "contributing factor material to" the determination of disability. 42 U.S.C. § 423(d)(2)(c) and 1382(a)(3)(1) (2006). In determining whether plaintiff's drug or alcohol abuse are material factors, the ALJ is required to apply the Commissioner's rule codified at 20 C.F.R. § 416.935. That rule states:

> (a) General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (b) Process we will follow when we have medical evidence of your

5

drug addiction or alcoholism. (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

(2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

(i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 416.935 (1995); Winegard v. Barnhart ,2006 WL 1455479, *10 -11

(W.D.N.Y.,2006).


## DISCUSSION[2]


The Plaintiff's Initial Application for Benefits

According to a report from orthopedic surgeon S. David Miller, M.D. dated on May 9, 2000, the plaintiff was involved in an automobile accident in 1992  which resulted in a herniated disc at L5-S1, necessitating discectomy. (Case No. 04CV875; R.  335-336, 528). Plaintiff was

---

[2]  Unless otherwise designated, all references noted as "(R.__)" are to the certified record of the administrative proceedings filed in connection with the respective administrative proceedings.

thirty-eight years old at the time she was examined by Dr. Miller.  She reported significant pain

in her right low back extending to her hip region and persistent numbness in her right foot.

Plaintiff stated that her symptoms were continuous and did not appear to be aggravated by sitting

more than standing. He found that Adkins was able to rise from sit to stand and ambulate with

symmetric gait; her range of motion of the trunk was moderately limited in both flexion and

extension; there was palpable tenderness over the right lumbar paraspinal musculature; straight

leg raising was positive on the right; she had difficulty heel and toe walking on the right, which

appeared related to pain; and deep tendon reflexes were diffusely depressed in the lower

extremities, bilaterally.  Dr. Miller assessed chronic low back pain, right sciatica and history of

L5-S1 herniated disc. Dr. Miller ordered x-rays of plaintiff's spine and referred plaintiff to

physical therapy. She was prescribed ibuprofen and Flexeril.  (Case No. 04CV875; R. 335).

When seen by Dr. Miller again on May 31, 2000. Adkins stated that Flexeril was too

sedating for her and reported that Soma had been beneficial to her in the past with respect to pain

relief. Plaintiff was to continue with physical therapy and was prescribed Soma for pain relief.

(Case No. 04CV875; R. 334).  Dr. Miller continued to follow Adkins regularly.  In June of 2000,

Dr. Miller noted the additional diagnosis of possible medial compartment degenerative joint

disease and associated pain at the knees. (Case No. 04CV875; R. 333). Dr. Miller submitted a

report dated December 14, 2000 in which he stated that plaintiff was diagnosed with mechanical

low back pain, right sciatica, and lumbar degenerative disease. (Case No. 04CV875; R. 440-

441).  At that time, Dr. Miller indicated that plaintiff did not have any mental symptoms. (Case

No. 04CV875; R. 441). He opined that plaintiff could not do her ususal work but was able to do

other type of work that was sedentary in nature. (Case No. 04CV875; R.  440-441). Sedentary

work was defined as work which involved occasionally lifting ten pounds, standing/ walking for two hours a day, sitting for six hours a day and using the hands for manipulation. (Case No. 04CV875; R.  440).

Adkins was also treated at Sheehan Memorial Hospital during this time period for complaints of back pain, knee pain, allergic rhinitis, sinusitis, rash and upper respioratory infection. (Case No. 04CV875; R.. 344-369).  Also, the plaintiff underwent a consultative examination by Dr. S. Cheruvu on December 18, 2000.  At that time, a CT scan of the plaintiff's spine revealed disc bulging but no herniation. Case No. 04CV875; R. 362).  Dr. Cheruvu noted no muscle atrophy, trigger points or tenderness; no muscular spasms; Adkins was able to heel toe walk with both feet; squat and get on and off the examination table; gross and fine manipulation were within normal limits; motor strength, including hand grip, was five out of five bilaterally. Dr.  Cheruvu diagnosed lumbar disc bulges with possible sciatica.  He noted that the plaintiff would have some difficulty with heavy lifting, carrying, pulling, pushing and tugging. (Case No. 04CV875; R. 340-341).

In a report dated April 2, 2001, Mark Edson, C.S.W.R., the plaintiff's social worker reported that Adkins had a good ability to relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stress and function independently. (Case No. 04CV875; R. 371).  According to Edson, the plaintiff's ability to understand, remember and carry out both detailed and simple instructions was "good." (Case No. 04CV875; R. 372). However, he opined that Adkins ability to follow work rules and to maintain concentration/attention was "fair" due to depression. (Case No. 04CV875; R. 372).  Fair was defined as "seriously limited but not precluded." (Case No. 04CV875; R. 371).

Adkins was seen by Dr. Miller again on April 20, 2001.  On that examination, Dr. Miller

noted that the plaintiff revealed a normal gait; was able to heel to toe walk with difficulty and

minimally squat; she had difficulty getting on and off the examination table; gross and fine

manipulation of fingers and hands were normal; she had a moderate paralumbar muscle spasm;

straight leg raising was positive bilaterally; motor strength was five out of five bilaterally; she

had some numbness in her right sciatic nerve distribution. (Case No. 04CV875; R. 383).  He

diagnosed low back pain syndrome, lumbar radiculopathy, bilateral carpel tunnel syndrome,

depression, probable degenerative arthritis of the knees and headaches. Dr. Miller opined that

Adkins could not do work that involved lifting, bending or repetitive motion type tasks. (Case

No. 04CV875; R.382).

The plaintiff underwent a mental consultative examination by K.C. Sharma, a licensed

psychologist, on April 20, 2001. At that time, Adkins stated that she consumed a half of pint to

one pint of liquor, plus one quart of wine two to three times a week.  She also stated that she used

marijuana twice a week. (Case No. 04CV875; R. 386).  Sharma noted that Adkin's allegations

about symptoms of depression were confirmed. He stated that her attention and ability to

concentrate were "good." He concluded that the plaintiff's symptoms of depression and chemical

dependance/abuse "are likely to impact her work productivity, quality of work and ability to get

along with others." (Case No. 04CV875; R. 387).  He found her prognosis to be "poor" as long

as she continued to abuse alcohol and marijuana. (Case No. 04CV875; R. 388).

Psychiatrist Jeffrey Kashin, M.D., examined plaintiff on May 11, 2001. Upon

examination at that time, he concluded that the plaintiff was unable to "seek or maintain

employment." (Case No. 04CV875; R.  446). In a letter dated June 6, 2001, Dr. Kashin opined

9

that Adkins was "temporarily disabled" due to depression with an anticipated return to

employability of January 2, 2002. (Case No. 04CV875; R. 463).   In a report dated January 30,

2002, however, Dr. Kashin opined that the plaintiff's impairment was expected to last 12 months

or longer, stating that "there has not been significant change or improvement to enable client to

seek or maintain employment." (Case No. 04CV875; R. 449).

 Internist, Mohammed Babar, M.D., treated plaintiff at the clinic at Sheehan Memorial

Hospital on several occasions between January 3, 2001 and April 25, 2001.  Dr. Babar diagnosed

the plaintiff as suffering from chronic low back pain, right knee pain, hypertension, depression

and obesity. (Case No. 04CV875; R. 418, 432).   He noted that Adkins was non-compliant with

her follow-up to the orthopedist for her right knee pain. (Case No. 04CV875; R. 418). In a report

dated June 7, 2001, Dr. Babar concluded that plaintiff could perform sedentary work, *i.e.*, work

which involved occasionally lifting/carrying ten pounds, standing/walking at least two hours in

an eight hour day, and having use of the hands for manipulation. (Case No. 04CV875; R. 419-

422).

 Based upon this record, the ALJ determined that the plaintiff suffered from severe

impairments including obesity; degenerative disc disease at L5-S1, chondromalacia patella, mild

osteoarthritis and a meniscal tear in the right knee, hypertension, depression (severe only since

February-March of 2001), cannabis abuse disorder and alcohol dependence. (Case No. 04CV875;

R. 23).   The ALJ found that the plaintiff's impairments did not meet the listings, and that the

plaintiff retained the residual functional capacity to perform her past relevant work as a telephone

solicitor/telemarketer. (Case No. 04CV875; R. 32).   As discussed above, the medical evidence in

the record does not suggest that the plaintiff was permanently disabled from performing

substantial gainful activity for the period involved in this application for benefits.  The record

includes the opinions of two of the plaintiff's treating physicians who state that the plaintiff

could perform sedentary work during this time frame.   The record does contain conflicting

evidence regarding the severity of the restrictions relating to the plaintiff's depression during this

period. Although Dr. Kashin opined that the plaintiff could not work due to her depression, the

record also includes a subsequent statement from Dr. Babar to the effect that Adkins had no

emotional or psychological impairment that would preclude her from working.  Further, the

record contains an evaluation from a non-examining consultative psychiatrist, Dr. Raphael Leo.

He noted that the record did not reflect any psychosis associated with the plaintiff's depression.

He stated that the plaintiff's depression was "non-severe" and that Adkin's allegations as to

restrictions relating to her depression are not credible "in light of [a] lack of significant

psych[iatric] symptoms."  (Case No. 04CV875; R. 401, 413).   In this instance, the ALJ expressly

considered Dr. Kashin's opinion and determined that it was not entitled to controlling weight.

Although the opinion of a specialist is to be afforded more weight than that of a non-specialist or

a non-examining  physician (see 20 C.F.R. § 404.1527(d)), the ALJ provided an adequate basis

for refusing to afford Dr. Kashin's opinion controlling weight in this case. In addition to noting

the contradictory opinions stated by Dr. Babar and Dr. Leo, the ALJ pointed to the fact that Dr.

Kashin failed to provide any specific details relating to Adkins' functional abilities or limitations.

(Case No. 04CV875; R. 27).   The ALJ noted that Dr. Kashin did not treat Adkins for the entire

period since the alleged onset date and did not provide a residual functional capacity evaluation

(although requested to do so).  The ALJ pointed to the fact that Dr. Sharma, a licensed

psychologist, had found that the plaintiff's attention and concentration were "good" even though

he concluded that Adkins' prognosis was poor due to her alcohol and drug abuse.   Significantly, the ALJ noted that Dr. Kashin's opinion did not discuss the impact of the plaintiff's use of alcohol and marijuana abuse. (Case No. 04CV875; R. 28).   These deficiencies in Dr. Kashin's opinion do provide a basis for the ALJ to refuse to give it controlling weight.

Thus, based upon the administrative record as of September 25, 2002, the ALJ's conclusion that the plaintiff's physical impairments (including her obesity, hypertension and various orthopedic issues) and depression did not preclude her from performing her past relevant work as a telephone solicitor/telemarketer for a twelve month period as of that date is supported by substantial evidence.   It is recommended that this administrative decision be affirmed.

The Plaintiff's Second Application for Benefits

The record with respect to the plaintiff's second application for benefits includes virtually all of the medical records submitted in connection with Adkins' first application, plus the following reports. In a June 7, 2001 report, Dr. Babar concluded that the plaintiff could perform sedentary work and was not seriously impaired in her ability to relate to other people. (Case No. 05CV31; R. 195).[3]   Treatment notes from Dr. Babar between February 28, 2002 and November 2002 reflect that plaintiff complained of low back pain, which she rated four or five out of ten

---

[3]   Although this report relates to the period prior to September 26, 2002, it appears that this report, and several other pre-September 26, 2002 records mentioned below, were not included in the record before the ALJ at the time of the hearing relating to the plaintiff's initial application for benefits.

12

and which was relieved by medication.. Plaintiff's hypertension was noted to be well-controlled and her right knee pain stable. (Case No. 05CV31; R. 139-144)

A sleep study performed on September 16, 2002 revealed increased sleep associated hypopneas and reduced sleep efficiency. If daytime symptoms persisted, Dr. Babar recommended a continuous positive airway pressure ("CPAP") titration study. Caution while driving and operating machinery was advised. No other functional restrictions were noted. (Case No. 05CV31; R. 131-133).

Social Worker Mark Edson and Dr. Kashin also submitted a joint report which indicated that Dr. Kashin last saw Adkins on June 19, 2002. (Case No. 05CV31; R. 158-164). At that time, he again diagnosed the plaintiff as suffering from major depressive disorder symptomatic of memory problems and difficulties with sleeping and social relationships. (R. 158). Plaintiff's social interaction was limited because of a"short fuse." (Case No. 05CV31; R. 162). He stated that "it would be very difficulty for her to maintain" sustained concentration and persistence at that time. (Case No. 05CV31; R. 162).

The plaintiff was examined by Rachel Hill, Ph.D., as a consultant to the Commissioner, on December 10, 2002. (Case No. 05CV31; R. 134-138). Dr. Hill stated that the plaintiff was cooperative but hostile and irritable throughout the interview. (Case No. 05CV31; R. 136). Adkins affect was anxious, tense, irritated and, at times, hostile; her mood was dysthymic. At that time, Adkins reported that she did not use drugs or alcohol. (Case No. 05CV31; R. 135). Dr. Hill diagnosed Adkins as suffering from a moderate major depressive disorder with psychotic features. She concluded that plaintiff could follow and understand simple directions and instructions and could consistently perform simple tasks. As to the plaintiff's ability to maintain

13

attention and concentration, Dr. Hill opined that Adkins could do so only "for a bit, not very long." (Case No. 05CV31; R. 137).

Steven Dina, M.D., also consultatively examined plaintiff on December 10, 2002. (Case No. 05CV31; R. 153-156).  During this examination, Adkins reported that she drinks only socially and denied any alcohol or drug problem.  (Case No. 05CV31; R. 153). He reported normal findings upon examination relating to gait, and stance and ability to walk on heels and toes. (Case No. 05CV31; R. 154).  Straight leg raising was to forty-five degrees in the supine position and ninety degrees in the seated position.  Dr. Dina found that sensation was decreased in the right lateral portion of plaintiff's foot.  (Case No. 05CV31; R. 155).  Dr. Dina concluded that the plaintiff had no functional impairment. (Case No. 05CV31; R. 156).

A report from non-examining State agency psychiatrist, Daniel Mangold, M.D., states that the plaintiff was not significantly limited in her ability to understand, remember and carry out very short and simple instructions.  According to Dr. Mangold's review of the documents, Adkins was not significantly limited in her ability to sustain an ordinary routine without special supervision, to make simple work-related decisions, to respond appropriately to changes in the work setting or to be aware of normal hazards and take appropriate precautions. He found that Adkins was moderately limited in other areas such as her ability to carry out detailed instructions or to interact appropriately with the general public and co-workers. (Case No. 05CV31; R. 188-189).   He found Adkins's restrictions due to her depression to be only moderate. (Case No. 05CV31; R. 181-185).

Adkins was admitted to Buffalo General Hospital from January 7, 2004 to January 16, 2004 due to a depressive disorder and suicidal thoughts. (Case No. 05CV31; R. 233).  She was

found to be moderately blunted and described various depressive signs and symptoms involving her sense of hopelessness and sudden fluctuations of mood. She was eventually discharged with prescriptions for Effexor XR; Remeron; Depakote and scheduled to receive outpatient treatment at Mid Erie Mental Health Program ("Mid Erie"). (Case No. 05CV31; R. 234).

Plaintiff began treatment at the clinic of Lovejoy-St. Vincent Hospital ("Lovejoy") on February 5, 2004. (Case No. 05CV31; R. 223-31).   She generally complained of chronic lower back pain.  She admitted to occasional marijuana use, the last use being two weeks prior.  (Case No. 05CV31; R. 227). Pain medication was prescribed.  A doctor from Lovejoy submitted a report dated July 27, 2004 which states that plaintiff could not perform heavy, medium, light or sedentary work because she was undergoing gastric surgery. This report suggested that the plaintiff could not return to her usual work, but that she was expected to recover in part and could eventually perform "other type of work". (Case No. 05CV31; R. 193).

Plaintiff went for treatment at the mental health clinic at Jewish Family Services on August 3, 2004 due to dissatisfaction with her previous provider. (Case No. 05CV31; R. 239-243).  The diagnosis, consistent with all prior reports, was that of depressive disorder and anxiety. (Case No. 05CV31; R. 243).

At the administrative hearing in September of 2004, James Phillips testified as a vocational expert (Case No. 05CV31; R. 268-73).  Phillips was asked to assume the following characteristics: A younger individual, with a high school education who could only lift ten pounds and would not be able to climb ladders, ropes, scaffolds or be able to balance.  This individual could also not kneel or crawl due to knee problems and could only occasionally climb ramps and stairs and stoop and crouch. This individual would have to avoid work that caused

vibration and hazardous work sites. She would be limited to simple, routine, repetitive low-stress

work due to depression and pain and needed to avoid large crowds.  (Case No. 05CV31; R. 271).

Based on that hypothetical, Phillips concluded that such an individual could not perform any of

the past work that plaintiff had performed, but could perform the job of laundry folder, which

was simple, sedentary and unskilled work. (Case No. 05CV31; R. 272).

　　　　After an administrative hearing, the ALJ found that the plaintiff had severe impairments

but retains the residual functional capacity to perform a range of sedentary work. (Case No.

05CV31; R. 17).  In this instance, the ALJ's determination is not supported by substantial

evidence. The Court notes that the record, which includes a diagnosis of psychosis relating to the

plaintiff's depression, as well as a psychiatric hospital admission due to suicidal ideations,

reflects a worsening of the plaintiff's non-exertional impairment since September 2002.   The

record is largely silent as to just how much the symptoms relating to Adkins' depression would

impact her ability to perform sustained gainful activity.  Although the ALJ notes that several of

Adkins' physicians and medical treatment professionals failed to comment on her residual

functional capacity (Case No. 05CV31; R. 15), the record does not reflect that the ALJ attempted

to develop the record in this regard. It is well-established that an administrative law judge bears

an affirmative duty to develop the administrative record. Tejada v. Apfel, 167 F.3d 770, 774 (2d

Cir.1999). The non-adversarial nature of Social Security proceedings require the ALJ "to

investigate the facts and develop the arguments both for and against granting benefits." Sims v.

Apfel, 530 U.S. 103, 111 (2000). This duty exists even where, as here, the claimant is

represented by counsel. Perez v. Chater, 77 F.3d 41, 47 (2d Cir.1996); Kleiman v. Barnhart, 2005

WL 820261 at *7 (S.D.N.Y.,2005).

The ALJ's determination is also based, in part, upon a finding that the plaintiff's allegations as to the limitations resulting from her impairments were not totally credible. The plaintiff argues that the ALJ erred in making such a finding.  In this instance, the ALJ's determination is not supported by substantial evidence.  The ALJ concluded that Adkins' allegations "are not totally credible for the reasons set for in the body of the decision."  (Case No. 05CV31; R. 17).   However, at no other place in the ALJ's decision does he address the plaintiff's credibility.   When discounting the testimony of a claimant as not credible, the ALJ is required to make specific findings discussion of the basis for such a determination. See Donato v. Secretary of Health and Human Services, 721 F.2d 414, 418-19 (2d Cir.1983)(ALJ required to carefully examine the claimant's descriptions of symptoms, resolve inconsistencies, and logically explain the individual's ability to work.  A proper consideration of credibility should have involved considering factors such as evidence of a good work record, which this Court views as entitling a claimant to "substantial credibility.") citing Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir.1983) (evidence of good work record is evidence of credibility).

Based on the above, the ALJ's determination in this case is not supported by substantial evidence in the record. This matter should be remanded back for further administrative proceedings, including (1) the development of the record and a proper assessment as to the plaintiff's residual functional capacity subsequent to September of 2002; and (2) a proper assessment of the plaintiff's credibility as to testimony relating to any pain and limitations resulting from her  impairments.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner dated September 25, 2002 be affirmed, and the decision of the Commissioner dated October 6, 2004 be vacated and this matter be REMANDED for further administrative proceedings consistent with the above.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation *must* be filed with the Clerk of this Court *within ten (10) days* after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).  <u>Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the recommendations contained herein.</u>** <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>F.D.I.C. v. Hillcrest Associates</u>, 66 F.3d 566 (2d Cir. 1995); <u>Wesolak v. Canadair Ltd.</u>, 838 F.2d 55 (2d Cir. 1988).

The District Court on *de novo* review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  <u>See</u> <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.


_____/s/  Hugh B. Scott_____
United States Magistrate Judge
Western District of New York

Buffalo, New York
February 8, 2007